**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | CASE NO. 7:11CR00046 |
| | ) | (CASE NO. 7:12CV80539) |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **KENNY BARRIOS FUENTES**, | ) | By: Robert S. Ballou |
| Defendant. | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Defendant Kenny Barrios Fuentes plead guilty in this court to illegally re-entering the United States without permission and was sentenced to 46 months in prison. He filed a motion to vacate, set aside or correct the sentence under 28 U.S.C. § 2255 claiming that his trial counsel provided ineffective assistance by failing to file a notice of appeal after Fuentes asked him to do so and by inadequately investigating his criminal history. After review of the record and testimony presented at an evidentiary hearing, I find that Fuentes did not ask counsel to appeal and that counsel was not otherwise ineffective with regard to Fuentes' appeal rights or sentencing. Accordingly, I recommend that the court grant the United States' motion to dismiss Fuentes' § 2255 motion.

## I. BACKGROUND

The relevant criminal history of Fuentes in the United States includes a conviction in the Roanoke City Circuit Court in June 2008 for possession of cocaine with the intent to distribute, in violation of Va. Code § 18.2-248. The court sentenced Fuentes to five years in prison, with 53 months suspended, and probation for two years. This conviction qualified as an aggravated felony for purposes of 8 U.S.C. § 1101(a)(43)(B), causing immigration authorities to remove Fuentes from the country to Mexico on September 19, 2008.

Fuentes, thereafter, returned to the United States without permission and was arrested on February 26, 2011, in Vinton, Virginia, on a charge of identity theft. Fuentes failed to appear for his scheduled court appearance, and was arrested on April 15, 2011 on the failure to appear charge.

A grand jury of this court returned a one-count indictment against Fuentes on June 9, 2011, charging that he illegally reentered the United States after his conviction for an aggravated felony and removal, in violation of 8 U.S.C. § 1326(a) and (b)(2). On January 17, 2012, Fuentes pleaded guilty, pursuant to a written plea agreement[1] to the illegal reentry charge. Fuentes stipulated in the plea agreement that an adjusted offense level of 20 should apply to his conduct, in exchange for the government's recommendation that he receive additional reductions for acceptance of responsibility and a sentence at the low end of the sentencing range.

The plea agreement set out in clear terms that Fuentes understood that: he faced a maximum sentence of 20 years in prison; "the determination of what sentence should be imposed [within the statutory range] is in the sole discretion of the Court subject to its consideration" of the sentencing guidelines and the factors listed in 18 U.S.C. § 3553(a); that he waived his right to appeal his sentence; and that "any calculation regarding the guidelines by the [prosecutor] or by [his] attorney is speculative and is not binding upon the court." Plea Agr. A(1), B(1), C(1). The agreement also indicated that Fuentes had read, reviewed with counsel, and understood "every part" of the plea agreement and that he had "not been coerced, threatened, or promised anything other than the terms of the plea agreement." Plea Agr. C(1). After conducting a plea colloquy,

---

[1] The record reflects that at arraignment, at the plea hearing, and at sentencing, the court provided Fuentes with the services of a Spanish-language translator.

the presiding district judge found that Fuentes was entering a knowing and voluntary guilty plea.[2]

The presentence investigation report ("PSR") applied the plea agreement stipulations, assigning Fuentes an adjusted offense level of 20, reduced by three levels for acceptance of responsibility, for a total offense level of 17. Paragraph 42 of the PSR stated: "Based on a total offense level of 17 and a criminal history category of IV, the advisory guideline range for imprisonment is 37 to 46 months." At sentencing on January 18, 2012, trial counsel for Fuentes stated that he had discussed the PSR with Fuentes in Spanish and English, and Fuentes affirmed to the court that he had an adequate opportunity to review the PSR and discuss it with counsel. The court adopted the PSR findings without objection from the parties, adopted the plea agreement, and stated in open court the recommended custody range of 37 to 46 months in prison.

Fuentes then testified about the difficulties he had faced after his prior deportation, trying to find work, room, and board in Mexico, and about his decision to return to the United States illegally in 2009 to escape a violent gang. He promised not to return again. On cross examination, Fuentes admitted that he had promised not to return on prior occasions. When questioned further by the court, Fuentes admitted that although he had only been formally deported on one prior occasion, he had also been stopped by border authorities on three or four occasions, after attempting to cross illegally into the United States. Both trial counsel and the government argued, under the plea agreement, for a sentence at the low end of the guideline range.

---

[2] The guilty plea hearing has not been transcribed. There is no issue, however, that Fuentes understood the plea agreement and the consequences of entering a guilty plea.

3

The district court found that the evidence of Fuentes' prior attempts to enter the country illegally indicated that his criminal history category underrepresented the extent of his criminal conduct and could support an upward departure above the guideline range. Because the judge had not notified Fuentes of a possible departure, the judge sentenced him to 46 months, the high end of the range.[3] The court advised Fuentes that his plea agreement included a waiver of the right to appeal and an appeal might cause him to lose the benefits of the agreement, but nevertheless, advised him that if he wanted to appeal, he would need to file a notice of appeal, or ask the clerk to file one on his behalf, within 14 days. No appeal was filed.

In his § 2255 motion, Fuentes alleges that trial counsel provided ineffective assistance (1) by failing to file a notice of appeal after Fuentes asked him to do so and (2) by failing to meaningfully investigate Fuentes' criminal history. Finding that resolution of Claim (1) required further factual development, the court took the government's motion to dismiss under advisement and referred the matter to me under 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing and provide a report and recommended findings and disposition.

Counsel was appointed to represent Fuentes, and I conducted an evidentiary hearing on September 20, 2013, with the defendant participating via video conferencing. Two Spanish-speaking interpreters provided immediate translation for Fuentes of everything said during the hearing. The court stood in recess at the defendant's request to allow adequate confidential consultation between counsel and Fuentes via the videoconferencing connection. Fuentes testified on his own behalf, and his former attorney testified.

## II. APPLICABLE LAW

In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. To

---

[3] The record also reflects that once Fuentes serves his prison term, he will be removed to Mexico.

establish ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced petitioner. Id. at 688, 694. In Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000), the Court held that Strickland applies to those situations where trial counsel had a duty to file a notice of appeal on the client's behalf. To establish a Sixth Amendment violation based on counsel's failure to file a notice of appeal, a petitioner must show that counsel deficiently performed the "purely ministerial task" of noting an appeal and that a reasonable probability exists that, but for counsel's deficient performance, the petitioner would have timely appealed. Flores-Ortega, 528 U.S. at 476-77, 484, 486; United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000).

An attorney who fails to file an appeal after his client instructs him to do so is *per se* ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477. If a client does not specifically instruct his attorney to note an appeal and does not state explicitly that he does not wish to appeal, counsel's deficiency in failing to note an appeal is determined by asking whether counsel consulted with the defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel did consult with the defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. If counsel did not consult with defendant, the court must then ask whether counsel had an affirmative duty to consult. Id. An attorney has an affirmative duty to consult with a client regarding his appeal rights when either (1) any rational defendant would want to appeal

5

(for example, where there is a non-frivolous ground for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. The defendant bears the burden of proving by a preponderance of the evidence his grounds for relief under § 2255. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## III. DISCUSSION

Neither the record of the criminal proceedings nor the evidence submitted at the evidentiary hearing supports a finding that the performance of trial counsel fell below an objective standard of reasonableness. In reaching this finding, I have taken into account the testimony from the evidentiary hearing, the extent of detail and coherent nature of the testimony, my observation of the witnesses, and the degree to which the testimony is consistent or inconsistent with, or corroborated by, other evidence in the case.

**Claim 1: No ineffective assistance regarding appeal**

Fuentes in his § 2255 motion asserted that right after sentencing, he asked his attorney to file a notice of appeal, the attorney agreed to do so, but then failed to file the notice as instructed. Fuentes contradicted this allegation at the evidentiary hearing testifying instead that he did not speak with counsel after sentencing and was unable to contact counsel regarding his desire to appeal. Based on this evidence, I find that Fuentes did not unequivocally ask counsel to file a notice of appeal immediately after sentencing as alleged in his § 2255 motion. Therefore, I recommend that the court grant the motion to dismiss as to Fuentes' claim that counsel was per se ineffective in failing to file a notice of appeal after being requested to do so. See Poindexter, 492 F.3d at 273.

Regarding the claim under Witherspoon, 231 F.3d at 926, and Flores-Ortega, 528 U.S. at 477-80, Fuentes contends that counsel failed to consult with him about an appeal and had a duty

to do so. From the weight of the evidence, I find that counsel consulted with Fuentes about the sentencing process and about the possibility of filing an appeal. Moreover, I also find that, after sentencing, Fuentes had no nonfrivolous ground for appeal of his sentence and never communicated to counsel any desire to file an appeal in this case so as to create a duty for counsel to consult.

Fuentes testified that from discussions with counsel before the plea agreement, Fuentes expected to get a sentence between 30 and 37 months. He stated that after sentencing, he was surprised and upset by the 46-month sentence, and wanted to appeal, but counsel did not meet with him. Fuentes testified that he called counsel's office telephone number three times during morning hours in the fourteen days after sentencing, but no one answered, and he was unable to leave a voicemail message. Fuentes also testified that he sent a letter to counsel's office about wanting to appeal the sentence, but never received any response. I do not find Fuentes' testimony on these matters to be credible, in light of other evidence.

First, Fuentes' claim that counsel promised him a sentence of 37 months if he pleaded guilty is substantially undercut by other evidence that Fuentes knew the plea agreement did not guarantee him any particular sentence. In entering the plea agreement, Fuentes represented that he had not been promised anything outside the terms of the agreement. He also indicated in the agreement that he understood its terms, which clearly stated that he faced a maximum of 20 years in prison, that the government was only agreeing to "recommend" a low-end sentence, and that the judge was "not bound by any recommendation or stipulation and may sentence [the defendant] up to the statutory maximum." Plea Agr. ¶B(1). The PSR expressly stated that Fuentes' advisory guideline range was 37 to 46 months in prison, and Fuentes affirmed to the court at sentencing that he had reviewed and discussed the PSR with counsel.

7

Second, I find credible counsel's testimony that he discussed federal sentencing procedures with Fuentes at length, in both Spanish and English, including the fact that the judge determines the ultimate sentence to be imposed and is not required to follow the government's sentencing recommendation. Counsel, an experienced defense attorney, stated with certainty that he reviewed the PSR with Fuentes before sentencing, that he never promised Fuentes any particular sentence, and that Fuentes did not ask him any questions when the court verbally stated that his custody range under the PSR was 37 to 46 months. From these facts, counsel could reasonably have believed that the 46-month sentence, while not what Fuentes had hoped for, was not outside the realm of the client's expectation and presented no viable ground for appeal.

Third, I also find credible counsel's unrebutted testimony that, as is his standard practice, after the court pronounced sentence, he met with Fuentes in the courtroom to discuss an appeal. Counsel testified that, after the court's advice about the appeal waiver and the appeal deadline, counsel told Fuentes that he saw no reason to appeal and did not plan to note an appeal unless Fuentes told him to do so. According to counsel, the interpreter relayed this statement to Fuentes in Spanish, and Fuentes replied, also in Spanish, that it was fine. Counsel testified that, at no time, did Fuentes ask him to note an appeal.

Finally, Fuentes' testimony that he tried within the appeal time to contact counsel about an appeal by telephone and letter is not supported by the other evidence. Fuentes testified that he did not remember specific dates or times that he called, did not keep notes about his calling attempts, and did not keep a copy of any letter to counsel about an appeal. Moreover, counsel testified that his office has a dependable receptionist who works every weekday, starting at 8:00 a.m., who can accept calls from the Roanoke City Jail toll free, and can forward a call to

8

counsel's voicemail if he is unavailable. Counsel also testified that, given the small size and centralized setup of the FPD office mail system, losing a client's letter about an appeal would be almost impossible. Fuentes did not offer any testimony to rebut counsel's account of his office setup or his post-sentencing discussion with Fuentes about not filing an appeal.

Viewing the totality of the evidence, I find that Fuentes did not communicate to counsel any desire to appeal his sentence, unequivocal or otherwise; that the circumstances did not create a duty for counsel to consult with Fuentes about an appeal, but that counsel did, nevertheless, consult with him and inform him that no appeal would be filed and why. Therefore, I find that counsel was not ineffective with regard to Fuentes' right to appeal, and I recommend that the motion to dismiss be granted as to Claim 1.

**Claim 2: No ineffective assistance regarding criminal history**

In his second § 2255 claim, Fuentes asserts that because his prior conviction under Virginia law did not constitute a "crime of violence," it should not have been used to "enhance" his federal sentence for illegal reentry. This claim has no factual basis.

In Section B(2) of his plea agreement, Fuentes agreed that his conduct (reentering the country illegally) called for a base offense level of 8, which would be increased by 12 levels under §2L1.2(b)(1)(B) of the U.S. Sentencing Guidelines ("USSG"). This section authorizes a 12-level increase in the offense level if the defendant has previously been convicted of "a felony drug trafficking offense for which the sentence imposed was 13 months or less." § 2L1.2(b)(1)(B). Fuentes' prior 5-year sentence for violating Va. Code § 18.2-248, with 53 months suspended, clearly qualified him for the 12-level enhancement under § 2L1.2(b)(1)(B). Because Fuentes thus fails to demonstrate any valid objection counsel could have made to his

9

adjusted offense level, his second claim of ineffective assistance fails under Strickland. Therefore, I will recommend that the motion to dismiss be granted as to Claim (2).

## VI. RECOMMENDED DISPOSITION

For the stated reasons, I **RECOMMEND** that the United States' motion to dismiss (ECF No. 34) be **GRANTED**, as Fuentes has failed to establish that he is entitled to relief under § 2255.

The Clerk of the Court is **DIRECTED** immediately to **TRANSMIT** the record in this case to the Honorable Glen E. Conrad, Chief United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Enter: January 21, 2014

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge