CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 20 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 7:11CR00046 |
| | Civil Action No. 7:12CV80539 |
| v. | |
| | **MEMORANDUM OPINION** |
| KENNY BARRIOS FUENTES, | |
| | By: Hon. Glen E. Conrad |
| Defendant. | Chief United States District Judge |

Defendant Kenny Barrios Fuentes, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The case is presently before the court for review of the government's motion to dismiss, the report and recommendation of United States Magistrate Judge Robert S. Ballou, and the defendant's objection to the report. For the reasons that follow, the court will overrule the defendant's objection, adopt the magistrate judge's report and recommendation, and grant the government's motion to dismiss.

## Background

On August 10, 12, and 14, 2007, Fuentes illegally entered the United States from Mexico. On each occasion, Fuentes was captured by the Border Patrol and returned to his native country.

Fuentes illegally reentered the United States again in October of 2007. In June of 2008, he was convicted in the Circuit Court for the City of Roanoke of possession of cocaine with intent to distribute, in violation of Virginia Code § 18.2-248. This offense, which qualified as an

aggravated felony under 8 U.S.C. § 1101(a)(43)(B),[1] subjected Fuentes to deportation. On September 19, 2008, following the completion of his active sentence of imprisonment, Fuentes was deported to Mexico.

Sometime thereafter, Fuentes once again illegally reentered the United States. On February 26, 2011, he was arrested in Roanoke County on charges of identity theft and driving without an operator's license. He failed to appear for a scheduled court proceeding, and was subsequently arrested for failure to appear. The federal authorities were alerted, and on June 9, 2011, a grand jury in the Western District of Virginia returned a one-count indictment charging Fuentes with illegally reentering the United States after having been deported subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). Assistant Federal Public Defender Randy V. Cargill was appointed to represent Fuentes during the criminal proceedings.

On October 24, 2011, Fuentes entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement.[2] By signing the agreement, the defendant certified that he was pleading guilty because he was, in fact, guilty of the offense charged and not because of any threats or promises; that he had discussed the plea agreement and all other matters pertaining to the indictment with his attorney; and that he was fully satisfied with his attorney and the

---

[1] Pursuant to § 1101(a)(43)(B) of Title 8, the term "aggravated felony" includes "a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." Under 18 U.S.C. § 924(c)(2), a "drug trafficking crime" includes "any felony punishable under the Controlled Substances Act." The offense of possessing cocaine with the intent to distribute is a felony punishable under the Controlled Substances Act and, thus, an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). See 21 U.S.C. § 841(a)(1) and (b); see also Powell v. Holder, 538 F. App'x 279, 280 (4th Cir. 2013) (holding that the petitioner's conviction for possession of cocaine with intent to distribute, in violation of Virginia Code § 18.2-248, was "clearly an aggravated felony," for purposes of 8 U.S.C. § 1101(a)(43)(B)).

[2] The record reveals that Fuentes was assisted by a Spanish language interpreter at all court proceedings.

2

attorney's advice. (Plea Ag. at 2, 10.) Under the terms of the plea agreement, Fuentes stipulated that he was subject to a base offense level of 8 under the United States Sentencing Guidelines, as well as a 12-point enhancement for his prior conviction for a felony drug trafficking offense. (Id. at 3.) In exchange, the government agreed to recommend that he receive a reduction for acceptance of responsibility and a sentence at the low end of the applicable Guidelines range. (Id.) Fuentes acknowledged, however, that the stipulations were not binding and that "the determination of what sentence should be imposed, within the confines of any applicable statutory minimums and maximums, [was] in the sole discretion of the Court subject to its consideration of the United States Sentencing Guidelines . . . and the factors set forth at 18 U.S.C. § 3553(a)." (Id. at 2.) Fuentes further acknowledged that any calculation regarding the Guidelines by the United States Attorney's Office or his attorney was "speculative" and nonbinding, and that he had "not been coerced, threatened, or promised anything other than the terms of this plea agreement . . . , in exchange for [his] plea of guilty." (Id. at 11-12.) Additionally, Fuentes agreed to waive his right to appeal any and all issues with the exception of those limited issues for which the right of appeal cannot be lawfully waived. (Id. at 7-8.)

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Fuentes possessed the capacity to make a voluntarily, intelligent, and informed plea. (Plea Hearing Tr. at 6-9.)[3] The court also established that the defendant understood the charge to which he was pleading guilty, as well as the purpose of the Rule 11 proceeding. (Id. at 9-11.)

---

[3] The court has reviewed the unedited transcript from the plea hearing.

The court instructed the Assistant United States Attorney ("AUSA") to review the salient portions of the plea agreement that Fuentes had reached with the government. In response, the AUSA outlined several sections of the plea agreement, including the section summarizing the potential penalties that Fuentes faced upon conviction. (Id. at 10.) The AUSA explained the elements of the offense with which the defendant was charged, and noted that the defendant had stipulated that he was subject to a base offense level of 8 under the United States Sentencing Guidelines, as well as a 12-point enhancement for his prior felony drug conviction. (Id. at 10-11.) The AUSA also noted that the government had agreed to recommend that the defendant receive a sentence at the low end of the applicable Guidelines range. (Id. at 12.) The AUSA emphasized, however, that "the ultimate sentence [imposed would be] in the clear discretion of the sentencing judge." (Id.) Upon being asked if the AUSA's summary of the plea agreement was consistent with his own understanding of the agreement, Fuentes responded in the affirmative. (Id. at 14.)

The court then inquired as to whether Fuentes was voluntarily pleading guilty. In response to questions from the court, the defendant confirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement; that "no one [had] told [him he] would receive a particular term of incarceration or that [his] case would turn out . . . a particular way"; that no one had attempted to coerce, force, or compel him to plead guilty; and that he was pleading guilty because he was, in fact, guilty of the offense with which he was charged. (Id. at 14-15.)

4

The court also discussed the plea agreement's waiver of appellate rights and its provisions regarding the Sentencing Guidelines. When asked if he had, in fact, agreed to waive most of his appellate remedies, Fuentes responded in the affirmative. (Id. at 15.) Fuentes also confirmed that he understood that the plea agreement contained stipulations regarding certain Guidelines provisions, but that "the court might decide that these stipulations should not be applied." (Id. at 18.) Likewise, Fuentes acknowledged that the applicable Guidelines range "may prove to be very different than what Mr. Cargill . . . told [him] that [he] could hope to receive," that there were "no guarantees" about the sentence he would receive, and that the court would not be bound by the government's agreement to recommend a sentence at the low end of the applicable Guidelines range. (Id. at 19, 21.)

The court subsequently reviewed the constitutional rights that Fuentes would waive if he entered a plea of guilty. Notwithstanding all of the rights that he would waive and the fact that the offense to which he was pleading guilty carried a term of imprisonment of up to twenty years, Fuentes indicated that he still wished to enter a plea of guilty. (Id. at 31.) The court then asked Fuentes to explain what he had done that made him believe that he was guilty of the offense with which he was charged. In response, Fuentes indicated that he had illegally reentered the United States after having been convicted of a felony drug trafficking offense. (Id. at 31-32.)

At the conclusion of the hearing, the court asked whether Fuentes was satisfied with Cargill's representation, and whether he had any questions regarding anything that had been said during the hearing. Fuentes indicated that he was satisfied with the services provided by Cargill, that he understood "everything," and that he did not have any questions. (Id. at 35-37.)

Prior to the sentencing hearing, a probation officer prepared a presentence investigation report. Consistent with the stipulations in the plea agreement, the probation officer determined that Fuentes was subject to an adjusted offense level of 20 and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 17. When combined with his criminal history category of IV, the defendant's total offense level gave rise to a range of imprisonment of 37 to 46 months under the advisory Sentencing Guidelines.

The court conducted the defendant's sentencing hearing on January 17, 2012. At the start of the hearing, Fuentes confirmed that he had received an adequate opportunity to review the presentence investigation report, and that he had discussed the report with his attorney. (Sentencing Tr. at 4.) Cargill advised the court that the defendant had no objections to the factual findings made in the report or the probation officer's proposed application of the Sentencing Guidelines. Consequently, the court adopted the report, finding that Fuentes's total offense level and criminal history category gave rise to a recommended term of imprisonment of 37 to 46 months.

When called as a witness by Cargill, Fuentes testified about the difficulties he faced in Mexico following his previous deportation, and his decision to return to the United States to escape a violent gang. (Id. at 10-11.) He promised not to return to the United States again. (Id. at 11.) In response to the court's questions, Fuentes admitted that although he had only been formally deported on one prior occasion, he had also been stopped by Border Patrol agents on three or four occasions, after attempting to illegally enter the United States. (Id. at 15-16.)

The court gave both sides the opportunity to offer any argument as to an appropriate disposition. Consistent with the plea agreement, the parties asked the court to impose a term of

imprisonment at the low end of the Guidelines range. However, the court ultimately declined to follow the parties' recommendation. The court found that the evidence of the defendant's prior attempts to enter the country illegally suggested that his criminal history category underrepresented the extent of his criminal conduct and could support an upward departure from the advisory Guidelines range. Because the court had not notified Fuentes of a possible departure, the court sentenced him to a term of imprisonment of 46 months, which constituted the high end of the applicable range.

At the conclusion of the sentencing hearing, the court informed the defendant as follows:

> Mr. Fuentes, I tell you, you have waived the right to appeal your sentence by virtue of the plea agreement and that waiver is binding unless the sentence exceeds the statutory maximum or is based on a constitutional[ly] impermissible factor. If you undertake to appeal, you may lose the benefit of your plea agreement. To the extent that the right of an appeal does exist, I tell you that a person who is unable to pay for the cost of an appeal may apply for leave to appeal without prepayment of cost. Any notice of an appeal must be filed within 14 days of the date of entry of [the] judgment of conviction or within 14 days of a notice of appeal filed by the United States. If requested, the clerk will prepare and file a notice of appeal on your behalf.

(Id. at 28-29.)

The final judgment was entered on January 28, 2012. Fuentes did not file a direct appeal of his conviction or sentence.

On December 14, 2012, Fuentes executed the instant motion to vacate under 28 U.S.C. § 2255. In the motion, Fuentes claims that Cargill provided ineffective assistance (1) by failing to file a notice of appeal after being requested to do so directly after sentencing, and (2) by failing to meaningfully investigate Fuentes's criminal history. Upon reviewing the defendant's motion and the government's motion to dismiss, the court concluded that the first claim of ineffective

7

assistance could not be resolved on the existing record. Accordingly, the court took the government's motion under advisement and ordered an evidentiary hearing on that claim. The matter was referred to Judge Ballou, pursuant to 28 U.S.C. § 636(b)(1)(B), for the conduct of the hearing and for a recommended disposition of the defendant's claims. Mark W. Claytor, Esq. was appointed to represent the defendant.

Judge Ballou conducted the evidentiary hearing on September 20, 2013, during which Fuentes and Cargill were called as witnesses. On January 21, 2014, Judge Ballou issued a report and recommendation, which includes the following findings:

1. Fuentes did not unequivocally ask counsel file a notice of appeal; and

2. The circumstances did not create a duty for counsel to consult with Fuentes about an appeal, but counsel nevertheless consulted with him and informed him that no appeal would be filed and why.

(Report and Recommendation at 6-9.) Based on these findings, Judge Ballou recommended that the court grant the government's motion to dismiss with respect to Fuentes's claim that counsel was ineffective in failing to file a notice of appeal. (Id. at 9.) Judge Ballou likewise found that Fuentes's claim that counsel was ineffective in failing to meaningfully investigate his criminal history was without merit and, thus, recommended that the court grant the government's motion to dismiss with respect to that claim.

Fuentes subsequently filed an objection to the magistrate judge's findings of fact and conclusions of law with respect to his claim that counsel was ineffective in failing to file a notice of appeal. In his objection, Fuentes maintains that he "unequivocally asked and directed trial counsel to note [an] appeal of the Court's sentencing judgment," and that "he left messages with trial counsel's office and wrote trial counsel a letter within the appeal period requesting [that]

trial counsel note [an] appeal." (Objection at 1-2.) Accordingly, he objects to the magistrate judge's findings and conclusions to the contrary.

## Standard of Review

The magistrate judge makes only a recommendation to the district court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and the responsibility to make a final determination remains with this court. Id. at 270-71. The court is charged with making a de novo determination of those portions of the report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

## Discussion

### I. Failure to File an Appeal

The court will first address Fuentes's claim that Cargill was ineffective in failing to file a direct appeal. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Id. at 687. To prevail on a claim of ineffective assistance, a defendant must show: (1) that "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." Id. With respect to the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. With respect to the second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

When evaluating an ineffective assistance claim that is based upon counsel's failure to file an appeal, the court is guided by the Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470 (2000). In Flores-Ortega, the Supreme Court recognized two scenarios in which a defendant may raise a claim of ineffective assistance for failure to file a notice of appeal. The first occurs when an attorney "disregards specific instructions from the defendant to file a notice of appeal." Id. at 477. Where such a claim is established, the attorney's assistance is per se ineffective. Id. at 483; see also United States v. Poindexter, 492 F.3d 263, 265 (4th Cir. 2007) (holding that "an attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in [a] plea agreement").

Having reviewed the record from the evidentiary hearing, the court adopts the magistrate judge's finding that Fuentes did not specifically instruct Cargill to file a notice of appeal. During the evidentiary hearing, Cargill unequivocally testified that Fuentes never instructed him to file an appeal, either in person, by telephone, or by letter. While Fuentes provided testimony to the contrary, the court agrees with the magistrate judge that Fuentes's testimony lacks credibility. In moving to vacate his sentence under § 2255, Fuentes specifically claimed that he "requested [Cargill] to timely file a notice of appeal . . . directly after sentencing," and that Cargill "advised [the defendant] that he would file the requested appeal to the Fourth Circuit Court of Appeals in a timely manner, but . . . failed to do so." (Def.'s Mem. in Supp. of § 2255 Mot. at 2.) At the evidentiary hearing, however, Fuentes offered a completely different version of events. He instead testified that he did not speak to Cargill after the sentencing hearing, and that he was

unsuccessful in his subsequent efforts to communicate with Cargill by telephone regarding his desire to file a notice of appeal. Fuentes testified that he eventually mailed a letter to Cargill's office notifying him of his desire to file an appeal. However, Fuentes did not retain a copy of the alleged letter, or attempt to rebut Cargill's cogent testimony regarding his office's system for processing incoming mail. On this record, the court is convinced that Fuentes's assertion that he unequivocally directed Cargill to file a notice of appeal is contrary to the weight of the evidence and must be rejected. Accordingly, counsel's failure to file an appeal was not per se ineffective.

Having concluded that Fuentes did not explicitly instruct Cargill to file a direct appeal, the court must determine whether Cargill consulted with Fuentes about an appeal.[4] In Flores-Ortega, the Supreme Court addressed whether counsel performs deficiently by not filing a notice of appeal in an "[in] between" case, in which the defendant "has not clearly conveyed his wishes one way or another." Id. at 477. The Supreme Court ultimately ruled as follows:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal . . . . If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

Id. at 478.

---

[4] In this context, the term "consult" has a specific meaning: "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478.

11

While the Supreme Court noted that it "expect[s] that courts evaluating the reasonableness of counsel's performance . . . will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal," the Court declined to adopt a per se rule mandating consultation. Id. at 481. Instead, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. In determining whether counsel had a constitutional duty to consult, the Supreme Court instructed courts to consider "all relevant factors," including whether the conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights. Id.

In this case, the court finds that, regardless of whether consultation was constitutionally required, Cargill did, in fact, consult with Fuentes about an appeal. Under the express terms of the plea agreement, the defendant waived his right to appeal any and all issues with the exception of those limited issues for which the right of appeal cannot be waived. During the Rule 11 hearing, Fuentes testified that he discussed this provision with his attorney, and that he intended to waive his right to appeal to a higher court. During the evidentiary hearing, the magistrate judge specifically asked Cargill whether he had the opportunity to speak to Fuentes regarding the advisability of an appeal at the conclusion of the sentencing hearing. In response, Cargill described the discussion that he had with Fuentes after the court reminded Fuentes of his limited appellate rights, and of the fact that he may lose the benefit of his plea agreement if he undertook

12

to appeal. Cargill testified that he advised Fuentes that he saw no basis to appeal,[5] and that he did not plan to note an appeal unless Fuentes instructed him to do so. Cargill further testified that the interpreter relayed this information to Fuentes in Spanish, and that Fuentes replied, also in Spanish, "it's fine." (Evidentiary Hearing Tr. at 32.)

Cargill also refuted Fuentes's claim that he unsuccessfully attempted to contact Cargill by telephone on multiple occasions following the sentencing hearing.[6] Cargill testified that his office has a dependable receptionist who works every weekday from 8:00 a.m. to 5:00 p.m., and that the receptionist can accept calls from the Roanoke City Jail toll free and forward them to counsel's voicemail if he is unavailable. (Id. at 27-28.) Cargill testified that he never received a voicemail message or any other communication from Fuentes expressing a desire to appeal. (Id. at 24.)

Having reviewed the record from the evidentiary hearing, the court credits Cargill's testimony, and finds that Cargill consulted with Fuentes about an appeal and that Fuentes never

---

[5] The court notes that counsel's advice regarding an appeal was entirely reasonable under the circumstances. The defendant's 46-month term of imprisonment was within the applicable Guidelines range and well below the 20-year statutory maximum. While the defendant asserted at the evidentiary hearing that he was promised a maximum term of imprisonment of 37 months, this assertion is belied by the record. The defendant expressly acknowledged under oath during the Rule 11 hearing that no one had promised him that he would receive a particular term of incarceration, and that he understood that the court would not be bound by the government's agreement to recommend a sentence at the low end of the applicable Guidelines range. (Plea Hearing Tr. at 14-15.) In the absence of any clear and convincing evidence to the contrary, the defendant is bound by his sworn representations at that hearing. See Fields v. Attorney Gen., 956 F.2d 1290, 1299 (4th Cir. 1992).

[6] In his objection to the magistrate judge's report, Fuentes claims that he left messages with Cargill's office. However, this assertion is contrary to Fuentes's own sworn testimony at the evidentiary hearing. See Evidentiary Hearing Tr. at 8 ("No, I never left a message . . . . [E]very time I called, no one answered the phone."); Id. at 13 ("I [would] call him in the mornings . . . . The phone rang and rang and rang, but nobody ever answered the phone.").

13

asked Cargill to file a notice of appeal on his behalf. Accordingly, the court concludes that Cargill's representation of Fuentes was not constitutionally deficient under Strickland and Flores-Ortega.[7] The court will adopt the magistrate judge's report and recommendation as to this claim and overrule the defendant's objection.

II. **Failure to Investigate the Defendant's Criminal History**

In his second claim of ineffective assistance, Fuentes asserted that counsel failed to meaningfully investigate his criminal history. Upon reviewing this claim, the magistrate judge determined that the defendant's prior drug trafficking conviction clearly qualified him for the 12-level enhancement that he received under § 2L1.2(b)(1)(B) of the Sentencing Guidelines, and that the defendant failed to demonstrate any valid objection that counsel could have made regarding his criminal history. Accordingly, the magistrate judge concluded that this claim fails under Strickland.

Fuentes did not file any objections to these conclusions by the magistrate judge. Finding no error, the court will adopt the magistrate judge's recommendation and dismiss this claim.

**Conclusion**

For the reasons stated, the court will adopt the magistrate judge's report and recommendation, overrule the defendant's objection to the report, and grant the government's motion to dismiss the defendant's § 2255 motion. Additionally, because Fuentes has

---

[7] Having concluded that counsel's performance was not deficient under Strickland and Flores-Ortega, the court need not consider the prejudice prong of the Strickland test.

failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 19th day of March, 2014.

*/s/ Jim Conrad*
Chief United States District Judge